# CIRCUIT COURT OF BALTIMORE CITY.

Filed December 20, 1916.

SARAH E. PHILBIN

VS.

RAPHAEL McPHERSON PHILBIN, ET AL.

*Charles J. Bonaparte* and *William J. Kennedy* for exceptant.

*Osborne I. Yellott* and *J. Leroy Hopkins* for trustees.

*Harry M. Benzinger* for purchaser.

DAWKINS, J.—

Exceptions are presented in this case to the ratification of a sale of eight lots of ground at public auction made by trustees appointed herein by this court. The exceptions are filed by Patrick H. Philbin, one of the defendants in the case, on the grounds:

1. Because the decree for a sale of the property was passed by this Honorable Court under a misapprehension as to the rights of this exceptant in the property to be sold.

2. Because there is now pending before this Honorable Court a proceeding intended to correct the condition of the pleadings in this cause to which the said misapprehension was due.

3. Because the price obtained at said sale is altogether inadequate.

4. Because the sale was so conducted as to discourage bidders.

5. Because the record of this case, as it stands, casts a cloud upon the title and tended to prevent competition and an adequate price at the said sales.

Exceptions 1 and 2 have already been determined by an opinion recently delivered, disposing of the questions raised by the said exceptions. This may be considered as conclusive also of the fifth exception, so that the only questions now to be considered are those of the inadequacy of price and the manner in which the sale was conducted.

There is always difficulty in saying what property should bring because the existing market demand, the condition of the property offered for sale, character of tenants if rented, desirability for improvement purposes and many other things must be considered.

The admitted assessed value of these eight lots is $6,239. It is also admitted that they brought $4,750 at public auction (tax sale) about two years ago. This present sale amounts to $3,200. Whilst some of the houses are shown to be in a somewhat dilapidated condition, yet they do not appear to be especially more dilapidated than they were at the time of the sale at $4,750. It has been shown that sales have been made in the immediate vicinity during the past few years of houses practically the same as the houses in this case for various sums from about $500 to $700 or over. The purchaser herein has even recently been negotiating for some houses near these at about $700. One of these houses now being considered was actually bid in for $730 at the separate bidding. One intending purchaser says he would have given $650 for another if he had not left after being led to believe that he would be unable to get a house even if he bid for it. For two of the houses shown to be in particularly bad condition separate bids were made of $225 each. The sewerage connections, which will cost about $100 or more for each house, have not been made. The water has been disconnected. The seven houses (one lot being unimproved) rent for about $880 per year. The taxes are $156, the water charges about $40 per year. The trustees offered three of the lots as one separate parcel, then each of the other lots separately, reserving each of the separate bids, until the sale was concluded, informing the bidders of this arrangement. They then offered the eight lots as an entirety. The last bid was more than the aggregate of the separate bids.

This sale should stand unless somebody has sustained a real injury. A purchaser has acquired rights that should not be ignored, even if he has gotten a "good thing." There is not the slightest doubt but that the trustees and the auctioneer acted with exceptional care in endeavoring to get the very highest price obtainable. The fact

that members of the family thought the property should have brought more than it did bring or that some one since the sale should have offered more for it are no grounds for vacating the sale. At a public sale fairly conducted any one had a right to bid. A large income to be derived from the property need not be considered, because this kind of property must show apparent large returns to offset loss of rents and other incidents of ownership. As was stated at the hearing, the classes of persons who would buy this property are individual home-seekers in the neighborhood or investors who buy and sell such properties. The properties not being contiguous, it could not likely be bought by one for a large development or plant construction. As the two classes of prospective purchasers should be sought, it would not seem inadvisable to offer the lots separately with the reservation of separate bids and then offer it as an entirety, as was done in this case, save that by starting with an offer of three undivided lots as one, would tend to discourage separate bidding, but as a fact there is but little testimony tending to show that any one who desired to bid for one lot failed to exercise his right to bid. In a row of contiguous small houses in order to interest a bidder of the investing kind it is desirable to offer them as an entirety, but it rather tends to destroy the interest and enthusiasm of the would-be separate bidder. There was a large crowd present at the sale, a number of bids on each piece of property was made. Apparently there was not more than one other bidder, besides the purchaser who bid for them as an entirety. The individual purchaser would not likely want to bid for the three undivided lots. The exceptant did not attend the sale. He apparently suggested no bidders. The plaintiff attended the sale, but did no more than to ask the trustees not to sacrifice the property and not to offer the three together (which request the trustees did not hear) and subsequently stated that some one she knew, who had forgotten about the sale, said he would give $200 more for the houses. She filed no exceptions.

There are numerous cases fixing the principles applicable to this case. Mere inadequacy of price is never sufficient to vacate a sale unless it be so gross and inadequate as to indicate some mistake or unfairness on the part of the trustees or others connected with the transaction. Courts should not make experiments by setting aside sales. A purchaser should not be stripped of a right fairly acquired and for full consideration merely because one who had had his day for fair competition desires that he be given a second opportunity. The property should be offered in the way that would command its fair market value. Selling separately or by entireties must depend upon location and surrounding circumstances. To put an advertisement in two daily papers with placards on the property should be sufficient advertising, even though in the opinion of some people the very best advertising medium was not used.

117 Md., Whitely vs. Whitely, 538.

121 Md., Edgecomb Park Co. vs. Finney, 320.

123 Md., Hunter et al. vs. Highland Land Co., 644.

127 Md., Boyd vs. Smith, 360.

With this statement of the facts, and the law applicable thereto, I have reached the conclusion that there is no gross inadequacy of price (save as hereinafter stated). The trustees and all connected with the sale have acted in perfect fairness and in a way that they deemed best for all concerned. That the intending separate bidders were not influenced to bid less than they would have bid under any other condition. That the property was fairly and fully advertised and "cried," I do not find that there was any good reason for not offering the three lots separately which were offered as an entirety. The trustee who helped to prepare the advertisement gives as the reason for so offering was because they were described as one lot in the title papers, making it necessary to have a survey made before he could offer them as separate lots notwithstanding there were two houses and one unimproved lot. This manner of offering was certainly not carrying out the plan of offering the houses separately, reserving the bid and then offering them as an entirety. The best evidence of this is the fact that the three lots offered as one parcel, only brought $815, which is very little more than one of the other houses (which was in good condition) brought. I have reached the conclusion that the sale of lots reported

from fourth to eighth, inclusive, should be ratified, unless the purchaser sees fit to be relieved from his purchase. He should have that privilege if he bought the property with the expectation of getting the whole. That, too, the sale of the lots reported as first, second and third the exceptions should be sustained. The purchaser to pay for the portion so to be ratified, the difference between the purchase money for all, viz., $3,200, and the amount of the separate bid for the three, viz., $815, less also thirty dollars—as the advance over the separate bids was $80 or $10 per lot. Making for the five lots, the sale of which will be ratified, the sum of $2,355. Counsel for the purchaser has informed the court that he is willing to accept the five upon this proportionate allowance for the three lots sold as an entirety. The trustees should offer the three lots for sale separately without delay. I am prepared to sign an order in accordance with the views above expressed.